# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

№ 14-CV-1752 (JFB)(GRB)
_____

CAROL VALENTINE,

Plaintiff,

VERSUS

AETNA LIFE INSURANCE COMPANY,

Defendant.
_____

**MEMORANDUM AND ORDER**
August 31, 2016
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, Carol Valentine (hereinafter, "plaintiff"), brought this action under the Employee Retirement Income Security Act ("ERISA") against defendant, Aetna Life Insurance Company (hereinafter, "defendant"), alleging that defendant improperly denied her benefits to which she claimed she was entitled pursuant to her former employer's Long Term Disability Coverage, which was administered by defendant. By Memorandum and Order dated August 25, 2015, the Court concluded that defendant's decision to terminate plaintiff's long-term disability benefits was arbitrary and capricious as a matter of law and remanded plaintiff's claim to defendant for reconsideration. Now before the Court is plaintiff's motion for attorney's fees and costs. For the reasons set forth below, the Court awards $19,591.00 in attorney's fees and $350 in costs.

I. BACKGROUND

A. Factual Background

A comprehensive recitation of plaintiff's efforts to obtain her long-term disability benefits is detailed in the Court's August 25, 2015 Memorandum and Order, *see Valentine v. Aetna Life Insurance Co.*, 125 F. Supp. 3d 425, 428 (E.D.N.Y. 2015), and is not repeated here. As relevant for the instant decision, on March 1, 2013, defendant notified plaintiff that she would be awarded benefits from her disability onset date through June 30, 2012, but that defendant had determined that she was not entitled to benefits after that date. Plaintiff objected to the decision to deny her benefits subsequent to June 30 and filed her complaint, challenging defendant's decision, in this Court on March 28, 2013.

The parties subsequently cross-moved for summary judgment. Defendant argued that sufficient evidence in the record supported its decision to deny plaintiff benefits after June 30, 2012. Plaintiff asserted that she was entitled to summary judgment because the evidence in the record established that she had an ongoing disability, and, in the alternative, she moved to remand her claim to the plan administrator for reconsideration.

In connection with the motion for summary judgment, plaintiff submitted to the Court certain materials that were not before defendant at the time it made its decision to terminate her benefits, contending that these materials should have been part of the administrative record.[1] Defendant moved to strike these submissions, arguing that they were not part of the administrative record and, therefore, should not be considered by the Court.

In its August 25, 2015 Memorandum and Order, this Court concluded that defendant's decision to terminate plaintiff's long-term disability benefits as of July 1, 2012 failed to address substantial evidence in the record, and was thus arbitrary and capricious as a matter of law. The decision also granted defendant's motion to strike the extra-record submissions, after concluding that it would apply an arbitrary and capricious standard of review, and consequently, that its review would be confined to the administrative record. *See Valentine*, 125 F. Supp. 3d at 439 n.12.

B. Procedural History

Plaintiff filed her motion for fees on November 3, 2015, to which her counsel, Ronald Epstein ("Epstein"), attached a document titled "Schedule of Services" (hereinafter, "Schedule of Services"). The document contained a list of the various tasks performed, the date on which they were performed, and the time expended on each task. In Epstein's Declaration supporting the Schedule of Services, he attested that the summary "was completed based upon [his] review of contemporaneous client notes, documents prepared and received in the course of th[e] proceeding, review of emails[,] including ECF notices and the Docket Entries in th[e] matter," and that it was "accurate to the best of [his] knowledge and represent[ed] a fair and accurate summary of the time spent in connection with this litigation." (Epstein Decl. ¶ 5, ECF No. 40-2.)

In its opposition to plaintiff's motion for fees, defendant challenged the Schedule of Services, noting that Epstein did not represent that the entries were prepared at the time the work was performed and argued that, in this Circuit, fees should not be awarded unless substantiated by time records that were prepared contemporaneously with the execution of the task.

In plaintiff's reply, Epstein responded that the Schedule of Services was sufficient because it was prepared based on "contemporaneous case notes, emails, and review of documents[,] emails[,] and the docket sheet." (Pl.'s Reply 8, ECF No. 43.)

---

[1] This material included an affidavit from plaintiff dated November 16, 2014, as well as the parties' responses to their respective discovery requests. Additionally, it also included medical information and documentation that plaintiff sent to defendant on March 25, 2013, after defendant rendered its decision terminating plaintiff's benefits as of July 1, 2012, in an effort to convince defendant to reopen plaintiff's claim and reconsider its decision. Defendant did not acquiesce, and plaintiff argued on summary judgment that defendant's refusal to consider this information was arbitrary and capricious.

2

However, in an effort to provide further substantiation, Epstein attached a sixty-four page document (Pl.'s Reply Ex. 1, ECF No. 43-1) that he described as the "underlying contemporaneous client records from [his firm's] computer based system," from which he derived the Schedule of Services. (Pl.'s Reply at 8.) This document contained a separate page for each date work was performed and listed the date the work was performed, the type of work performed (e.g. "file review" or "hearing"), and notes regarding the work performed. (*See id.*) However, this document did not indicate how much time was spent on each task. Epstein subsequently[2] provided a declaration in which he attempted to authenticate the sixty-four page print-out, declaring that he personally printed the notes from his firm's billing software, which was used in the ordinary course of business. (*See* ECF No. 49.)

Defendant thereafter submitted a surreply on January 29, 2016 (ECF No. 51) in which it again challenged plaintiff's submissions. It argued that plaintiff's declaration did not properly authenticate the sixty-four page document, that, even if properly authenticated, the document did not provide the time spent on each task, and that plaintiff had still failed to provide a document reflecting a contemporaneous record of how much time Epstein spent on each task.

At oral argument, held on February 17, 2016, the Court questioned Epstein about his time records. Though his description was rather convoluted, Epstein seemed to explain that, although his firm's billing software could produce a print-out that listed the tasks performed, the time spent on the tasks, and the dates on which the tasks were performed, he did not produce this information to the Court in this format because printing it this way would have revealed confidential information.[3] The Court directed Epstein to produce a print-out in this format, containing the task performed, the date on which it was performed, and the time spent on the task, but directed him to redact any confidential information.[4]

As directed, Epstein submitted a redacted version of the print-out from his firm's billing software, which he referred to as his "client track notes" (hereinafter, "Client Track Notes") on February 22, 2016. (ECF No. 53.) Defendant responded to the submission on March 11, 2016. (ECF No. 54.) Defendant stated that there were a number of discrepancies between the Schedule of Services and the Client Track Notes. For instance, defendant noted that, although the Schedule of Services contained an entry for work performed on January 16, 2015, there was no such entry in the Client Track Notes. Similarly, though the Schedule of Services sought fees for 2.5 hours of work on August 15, 2014, the Client Track Notes indicated that only 0.25 hours of work had been

---

[2] Following the submission of the sixty-four page document, defendant wrote to the Court, requesting to strike this document as it was not properly authenticated and because it was impermissibly submitted for the first time with plaintiff's reply. The Court held a telephone conference with the parties during which it refused to strike the document, but directed Epstein to submit a declaration authenticating the document and permitted defendant to submit a surreply to respond to the declaration.

[3] Instead, he had printed sixty-four individual time entries from the billing software. He further explained that printing the entries individually purportedly caused the record of the time spent on each task to be omitted.

[4] The Court also asked Epstein a series of questions on the record, and under penalty of perjury, to authenticate the documents maintained by the firm's billing software.

performed for the same task. Epstein thereafter submitted a letter, responding to these discrepancies. He explained that, in some cases, an entry might appear in the Schedule of Services, but not in the Client Track Notes, because he prepared the Schedule of Services by referencing other contemporaneously-prepared materials, like the docket sheet, in addition to the Client Track Notes.

The matter is now fully briefed, and the Court has considered all of the parties' submissions.

II. DISCUSSION

A. Plaintiff's Entitlement to Attorney's Fees and Costs

Plaintiff requests attorney's fees in the amount of $32,581.25[5] for 100.25 hours worked at a rate of $325[6] an hour, as well as $350 in costs. Defendant opposes this request, arguing that plaintiff is not entitled to fees because she did not succeed in the underlying action, fees are not justified under the circumstances of the case, and plaintiff has failed to provide adequate documentation to substantiate her request for fees.

1. Some Success on the Merits

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Trustees of the N.Y. City Dist. Council of Carpenters v. American Concrete Solutions, Inc.*, No. 13-CV-4714 (RA), 2014 WL 7234596, at *5 (S.D.N.Y. Dec. 18, 2014) (quoting 29 U.S.C. § 1132(g)(1)).

A district court's discretion to award attorney's fees under ERISA "is not unlimited." *Donachie v. Liberty Life Assur. Co.*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254-55 (2010)). Rather, in *Hardt v. Reliance Standard Life Insurance Co.*, the Supreme Court established that a court may only award attorney's fees to a beneficiary who has obtained "some degree of success on the merits." 560 U.S. at 255. The district court in *Hardt* remanded the plaintiff's claim to the plan administrator after concluding that "the plan administrator ha[d] failed to comply with the ERISA guidelines" and the plaintiff "did not get the kind of review to which she was entitled under applicable law." *Id.* at 255. Although the district court did not grant the plaintiff's motion for judgment on the pleadings, it did opine that "it was inclined to rule in her favor" on her benefits claim. *Id.* at 256. On remand, the plaintiff was awarded her benefits. *Id.* The Supreme Court concluded that "[t]hese facts establish that [the plaintiff] . . . achieved far more than 'trivial success on the merits' or a 'purely procedural victory'" and therefore that it was appropriate to award attorney's fees. *Id.* However, the Court expressly declined to decide "whether, a remand order, without more, constitutes 'some success on the merits.'" *Id.*

The Second Circuit has not answered this question either, observing only that *Hardt* "clearly held that a remand order opining

---

[5] In plaintiff's brief, she also states that the total sought is $32,548.25; however, given the rate and hours claimed, it appears that this amount reflects a typographical error.

[6] In plaintiff's brief, she also states that she seeks a rate of $320 an hour; however, given the rate and hours claimed, it appears that this rate reflects a typographical error.

4

positively on the merits of the plaintiff's claim was sufficient" to constitute 'some success on the merits.'" *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 155 (2d Cir. 2013). At the district court level, in *Demonchaux v. Unitedhealthcare Oxford*, the court concluded that attorney's fees were justified because the plaintiff had achieved some success on the merits because the court remanded her claim and also "opined positively on [her] claim." No. 10 CIV. 4491 DAB, 2014 WL 1273772, at *3 (S.D.N.Y. Mar. 27, 2014). The court noted that, even though the plaintiff had not proven that she was entitled to benefits, that fact "[did] not negate its favorable comments as to the merits of Plaintiff's claim." *Id.*

However, in *Wallace v. Group Long Term Disability Plan For Employees of TDAmertrade Holding Corp.*, the court concluded that the plaintiff was entitled to attorney's fees without making reference to any positive opinion offered regarding the merits of the underlying claim. No. 13 CIV. 6759 LGS, 2015 WL 4750763, at *6 (S.D.N.Y. Aug. 11, 2015), *appeal dismissed* (Oct. 30, 2015). Instead, the court observed that "[b]y procuring a remand for further consideration of whether her OCD is disabling, Plaintiff has achieved an adequate degree of success on the merits to warrant attorneys' fees," *id.*, and cited to a recent decision from the First Circuit, *Gross v. Sun Life Assurance Co. of Canada*, which held that:

> [After *Hardt*,] [m]ost courts considering the question . . . have held that a remand to the plan administrator for review of a claimant's entitlement to benefits, even without guidance favoring an award of benefits or an actual grant of benefits, is sufficient success on the merits to establish eligibility for fees . . . .

763 F.3d 73, 77 (1st Cir. 2014) (alterations in original).

As apparent from the *Gross* case, many courts have concluded that remand—including, as is the case here, because the administrator's decision was arbitrary and capricious—without more, constitutes success on the merits. *See, e.g.*, *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546-47 (6th Cir. 2011) (affirming lower court's conclusion that remand alone was sufficient to constitute success on the merits because it provided the plaintiff with "another shot" at his claimed benefits); *Hilderbrand v. Nat'l Elec. Benefit Fund*, No. 13-3170, 2016 WL 614352, at *3 (C.D. Ill. Feb. 16, 2016) ("[N]umerous courts, including district courts within the Seventh Circuit, have found that a remand order alone can constitute some success on the merits. These courts generally reason that the plaintiffs achieved some success on the merits by establishing an ERISA violation and obtaining a second review of their claims."); *Cannon v. Aetna Life Ins. Co.*, No. CIV.A. 12-10512-DJC, 2014 WL 5487703, at *2 (D. Mass. May 28, 2014) (holding that "many district courts, including other judges in this district, have concluded that a remand to the defendant to conduct further administrative proceedings is not a merely procedural victory" and collecting cases); *Cockrell v. Hartford Life & Acc. Ins. Co.*, No. 11-2149, 2013 WL 2147454, at *2 (W.D. Tenn. May 15, 2013) (observing that the plaintiff was entitled to fees because she "'achieved far more than trivial success on the merits or purely a procedural victory' when she persuaded this Court that [the defendant's] decision was arbitrary and capricious and that it should not be upheld under ERISA"); *see also Delprado v.*

*Sedgwick Claims Mgmt. Servs., Inc.*, No. 1:12-CV-00673 BKS, 2015 WL 1780883, at *41 (N.D.N.Y. Apr. 20, 2015) ("[E]ven though Plaintiff is not entitled to summary judgment, she has obtained some degree of success on the merits in showing Defendants' decisions on her [disability benefits claim] to be arbitrary and capricious and requiring remand."). As the court in *Gross* explained, these courts conclude that "remand simpliciter" is enough to constitute success on the merits under *Hardt* based on "the two positive outcomes inherent in such an order: (1) a finding that the administrative assessment of the claim was in some way deficient, and (2) the plaintiff's renewed opportunity to obtain benefits or compensation." *Gross*, 763 F.3d at 78.

The Court finds this reasoning, though not binding, persuasive, and agrees that "remand simpliciter" is sufficient to constitute "some success on the merits" under *Hardt* and that an endorsement from the Court on the merits of the claim is unnecessary. Accordingly, here, even though the Court did not "opine positively" on the merits of her claim to the degree that the district court did in *Hardt*, plaintiff nevertheless achieved some success on the merits by convincing the Court to remand her claim, and is therefore entitled to attorney's fees.

The Court is further persuaded that attorney's fees are justified here given that the Supreme Court in *Hardt* concluded that the plaintiff had achieved "far more" than trivial success on the merits based on three factors: "(1) a remand requiring a reevaluation of her claim, (2) the district court's expressed favorable view of that claim, . . . and (3) an eventual award of benefits by the plan administrator," *Gross*, 763 F.3d at 77 (citing *Hardt*, 560 U.S. at 256 (internal citations omitted)), and, here, plaintiff secured a remand of her claim for further evaluation and, on remand, the administrator awarded her the desired benefits. Though this Court's August 25, 2015 Opinion remanding the claim did not express the same type of enthusiastic endorsement of the merits of plaintiff's claim as the district court did in *Hardt*, this Court did express reservations concerning the handling of plaintiff's claim by defendant. *See, e.g.*, *Valentine*, 125 F. Supp. 3d at 441 (describing physician consultant's conclusions, which defendant subsequently adopted, as "utterly perplexing"). Given that the Supreme Court in *Hardt* determined that the combination of the three factors delineated above amounted to "*far more* than trivial success on the merits," 560 U.S. at 256 (emphasis added) (internal quotation marks omitted), this Court concludes that plaintiff's attainment of a remand and ultimate success in obtaining her benefits, along with the Court's expressed reservations about the administrator's treatment of plaintiff's claim is at least enough to qualify as some success on the merits under *Hardt*.

2. *Chambless* Factors

After *Hardt*, the question of success on the merits is the only factor the court is *required* to consider. *See Donachie*, 745 F.3d at 46. However, *Hardt* made clear that a court may additionally, in its discretion, consider the traditional five factors test, *see Hardt*, 560 U.S. at 249, known in this Circuit as the *Chambless* factors, which are: "(1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal

6

question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987).

The Court's consideration of these factors further reinforces its conclusion that plaintiff is entitled to attorney's fees. With respect to the first factor, the opposing party's culpability, the Second Circuit has clarified that a showing of bad faith is not required and that a finding that the administrator's review of the claim was arbitrary and capricious is sufficiently culpable to weigh in favor of granting attorney's fees. *See, e.g.*, *Donachie*, 745 F.3d at 47 (noting that the Second Circuit recognizes that an administrator may be culpable under *Chambless* where his decision was arbitrary and capricious); *Demonchaux*, 2014 WL 1273772, at *5 ("[T]he Court's holding that [the defendant's] denial of [the plaintiff's] claim was arbitrary and capricious suffices to show [the defendant's] culpability."); *Levitian v. Sun Life and Health Ins. Co.*, No. 09 Civ. 2965, 2013 WL 4399026, at *2 (S.D.N.Y. Aug. 15, 2013) ("[T]he culpability factor of *Chambless* is satisfied by the findings by this Court and the Second Circuit that Defendant's denial of plaintiff's benefits was arbitrary and capricious."); *Zurndorfer v. Unum Life Ins. Co. of Am.*, 543 F. Supp. 2d 242, 264 (S.D.N.Y. 2008) (explaining that "the Second Circuit has held that 'a defendant is culpable under *Chambless* where it violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.'" (quoting *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006))); *Cohen v. Metro. Life Ins. Co.*, No. 00 CIV 6112 LTS FM, 2007 WL 4208979, at *1 (S.D.N.Y. Nov. 21, 2007) ("An arbitrary and capricious determination by an administrator . . . in connection with a plaintiff's claim for benefits satisfies the culpability factor."), *aff'd in part*, 334 F. App'x 375 (2d Cir. 2009).

As to the second factor, although defendant does not contest its ability to pay, "its ability to pay generally is neutral in effect." *Alfano v. CIGNA Life Ins. Co. of N.Y.*, No. 07 Civ. 9661, 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) (citing *Lauder v. First UNUM Life Ins. Co.*, 284 F.3d 375, 383 (2d Cir. 2002)). However, "[a]t the very least, the ability to pay factor does not weigh in Defendant's favor." *Demonchaux*, 2014 WL 1273772, at *5.

With respect to the third factor—deterrence of "other persons acting under similar circumstances"—courts in this circuit have recognized that awarding attorney's fees where the administrator has failed to consider important medical information can serve to deter administrators from engaging in such arbitrary and capricious behavior in the future. *See Demonchaux*, 2014 WL 1273772, at *4 (S.D.N.Y. Mar. 27, 2014) (observing that an award of attorney's fees would "serve to deter administrators from making arbitrary and capricious benefits denials"); *Levitian*, 2013 WL 4399026, at *2 ("[G]ranting plaintiff a fee award in this case would deter insurers generally from denying legitimate benefit claims.").

Although plaintiff's case does not satisfy the fourth factor by producing some common benefit or resolving a significant legal question concerning ERISA, the Second Circuit has made clear that the failure to satisfy this element does not foreclose the recovery of attorney's fees. *See, e.g.*, *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004) (explaining that "the failure to satisfy the [common benefit] *Chambless* factor does not preclude an award of attorney's fees"); *see also Demonchaux*, 2014 WL 1273772, at *5 (same); *Winkler v.*

7

*Metro. Life Ins. Co.*, No. 03 CIV. 9656 (SAS), 2006 WL 2850247, at *3 (S.D.N.Y. Sept. 28, 2006) (same).

Finally, as to the relative merits of the parties' positions, by concluding that the administrator's denial of benefits was arbitrary and capricious because of the failure to address substantial evidence, the Court recognized that plaintiff's position was the meritorious position on the issue of remand. *See Rappa v. Conn. Gen. Life Ins. Co.*, No. CV-03-5286 CBA/JMA, 2005 WL 6244543, at *2 (E.D.N.Y. June 28, 2005) (holding that the finding that the "denial of benefits . . . was arbitrary and capricious . . . is a determination that plaintiff's position had merit and defendants' did not"); *see also Demonchaux*, 2014 WL 1273772, at *5 (holding that "the relative merits of the parties' position is thus "in little doubt" where "defendant's denial of plaintiff's claim was arbitrary and capricious, forcing her to bring the present lawsuit").

Accordingly, the Court concludes that an award of attorney's fees is also appropriate under a weighing of the *Chambless* factors.

B. The Fee Award

Generally, to determine a reasonable attorney's fee, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986) (internal quotation marks omitted)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551 (emphasis in original).

1. Reasonable Hours

a. Contemporaneous Records

The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). Motions for attorney's fees in this Circuit must comply with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), which requires attorneys to submit contemporaneous time records that specify "the date, the hours expended, and the nature of the work done." *Id.* at 1148. The contemporaneous time records requirement is strictly enforced, and as a result the records must be made "while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do." *United States ex rel. Krause v. Eihab Human Servs.*, No. 10-CV-898 (RJD), 2014 U.S. Dist. LEXIS 136599, at *8 (E.D.N.Y. June 6, 2014) (quoting *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010), *report and recommendation adopted*,

8

2014 U.S. Dist. LEXIS 136599 (E.D.N.Y. Sept. 25, 2014)). When an attorney fails to keep contemporaneous records, a motion for fees must ordinarily be denied in its entirety. *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010).

As detailed above, Epstein was eventually able to submit his Client Track Notes, which contained a description of the work performed, the date on which it was performed, and the time devoted to each task. He has further represented to the Court, under penalty of perjury, that this information was created contemporaneously with the performance of the work and recorded in the regular course of his business, and the Court credits that representation. Specifically, although it took several attempts to secure this information from Epstein, the Court concludes that the materials submitted by plaintiff in conjunction with his representations to the Court, are sufficient to prevent the Court from dismissing his fee application for failure to provide contemporaneous records. *See New York Youth Club v. Town of Harrison*, No. 12-CV-7534 (CS), 2016 WL 3676690, at *4-5 (S.D.N.Y. July 6, 2016) (holding that, although attorney's initial submission that was merely a "re-created summary of her billable time" based on "contemporary records" was insufficient under *Carey*, attorney would not be denied fees because she subsequently submitted "copies of the contemporaneous time records which were used to create the list of services performed").

However, as described above, and detailed in defendant's letter of March 11, 2016 (ECF No. 54), a number of the entries contained in the Schedule of Services are inconsistent with the Client Track Notes, in which Epstein made the contemporaneous record of his work. These entries, amounting to a total of 21.1 hours,[7] must be excluded. Epstein is not entitled to attorney's fees for time for which he cannot produce a corresponding contemporaneous record. *See Carey*, 711 F.2d at 1147.

Nevertheless, Epstein claims that, even if there was no record in the Client Track Notes, he based his entry in the "Schedule of Services" on other contemporaneously-prepared documents, like the docket sheet. For instance, he claims that he included a request in his "Schedule of Services" for one hour of work to perform a file review and participate in a pre-motion conference on October 31, 2014 based on an entry on the docket from the same date, even though there is no corresponding entry in the Client Track Notes. Even if the docket refreshed Epstein's recollection of what tasks he performed on a given date, it cannot accurately establish how long he worked on that task; rather, it is apparent that, when relying on documents

---

[7] This sum was calculated by tallying the amounts identified in defendant's March 11, 2016 letter for which there is an entry in the Schedule of Services, but no corresponding entry in the Client Track Notes. However, in several instances, the Client Track Notes merely reflected that Epstein performed less work than requested in the Schedule of Services (e.g., on August 15, 2014, the Schedule of Services states that Epstein performed 2.5 hours of work for "receipt and review of Defendant's Responses (and objections) to Plaintiff[']s Request (74 pages)"; however, the Client Track Notes indicate that Epstein performed only .25 hours of work). In these cases, Epstein can only be compensated for the amount of time reflected in the Client Track Notes, not for any additional time sought in the Schedule of Services (i.e., in the August 15 example provided above, Epstein may only recover for the .25 hours listed in the Client Track Notes, not the entire 2.5 hours sought in the Schedule of Services). Relatedly, on November 17, 2014, the Client Track Notes indicate that Epstein spent 30 hours preparing for oral argument. This entry is impossible and plainly incorrect. Though the "Schedule of Services" requests only 3.5 hours for this preparation, the accuracy of this figure is not confirmed by a contemporaneous record, and plaintiff therefore cannot recover for this time.

9

other than the Client Track Notes to create the Schedule of Services, Epstein was forced to make estimates about how much time he spent on each task. Such speculation cannot support a fee award. *Youth Club*, 2016 WL 3676690, at *5 (noting that a "reconstructed summary of billable work" cannot satisfy the contemporaneous records requirement (citing *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (hindsight review inadequate substitute for contemporaneous time records))).

          b.        Unsuccessful Claims

Defendant also contends that plaintiff is not entitled to fees for time spent on unsuccessful arguments. The Supreme Court has recognized that "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440; *Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014). In *Hensley v. Eckerhart*, the Supreme Court held that:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. at 440; *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). The Supreme Court further explained that, in cases where a plaintiff pursues "distinctly different claims for relief that are based on different facts and legal theories" (even though brought against the same defendants), "counsel's work on one claim will be unrelated to his work on another claim" and thus, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 434-35. However, "[a] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000) ("The district court therefore has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or are based on related legal theories." (internal quotation marks and citation omitted)).

Defendant contends that plaintiff did not succeed on a number of the arguments that she asserted in support of her claim that the administrator's decision was arbitrary and capricious, such as her argument that defendant acted in an arbitrary and capricious manner by failing to refer her for an independent medical examination and by failing to consider the additional information plaintiff submitted in March 2013. (*See* Def.'s Opp'n ("Opp'n") 6-7, 16-17, ECF No. 42.) However, plaintiff succeeded in convincing the Court that defendant's decision was arbitrary and capricious. To the extent that this determination rested on an argument other than those defendant seeks to exclude, the Supreme Court recognized, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing

a fee." *Hensley*, 461 U.S. at 435. "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit[;] . . . [t]he result is what matters." *Id.* Furthermore, these arguments were based on a "common core of facts" and "related legal theories," and, under such circumstances, the Supreme Court has found that it is not appropriate to adjust downward to account for the related unsuccessful claims because all of the claims are sufficiently intertwined. *LeBlanc-Sternberg v. Fletcher, et al.*, 143 F.3d 748, 762 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434-5); *see also Zervos v. Verizon New York, Inc.*, No. 01-CIV-0685(GBD)(RLE), 2002 WL 31553484, at *5 (S.D.N.Y. Nov. 13, 2002) (concluding that "because of the common factual matters, this is not the kind of case where some hours may be factored out as unreasonable"); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 167 (E.D.N.Y. 2004) ("Where it is impractical to separate out the hours, for example because the successful and unsuccessful claims are interwoven by a common core of facts so that much of the time was spent in developing the case as a whole, the hours are included in toto in the lodestar calculation.").[8]

Defendant also argues that plaintiff's fees should be reduced because she was unsuccessful on her argument concerning the appropriate standard of review. (Opp'n at 7.) The Court disagrees. The Court in *Fairbaugh v. Life Insurance Co. of North America*, dispensed with a similar argument, describing it as "silly," and explained:

> It is true that Plaintiff contended initially for a *de novo* review by the Court rather than the arbitrary and capricious standard the Court applied, but Plaintiffs' attorneys then demonstrated that Defendant's termination of benefits was indeed arbitrary and capricious, thereby achieving for Plaintiff complete success on her core claim that payment of her benefits should resume. To downgrade Plaintiff's success on that core claim because of her counsel's initial embrace of the wrong standard of review would be . . . inequitable.

872 F. Supp. 2d 174, 190-91 (D. Conn. 2012), *supplemented* (Aug. 20, 2012); *contra Anderson v. Sotheby's, Inc.*, No. 04 CIV. 8180 (SAS), 2006 WL 2637535, at *4 (S.D.N.Y. Sept. 11, 2006) (excluding fees pertaining to unsuccessful motion requesting application of a *de novo* standard of review). This Court agrees that it is unnecessary to reduce plaintiff's fee award in light of her failure to successfully argue for a *de novo* standard of review, given that she still succeeded in convincing the Court that her claim should be remanded because defendant's decision to terminate her long-

---

[8] Defendant points out that plaintiff did not successfully defend against defendant's motion to strike the extra-record evidence provided to defendant in March 2013 and submitted as an exhibit to plaintiff's cross-motion for summary judgment. However, plaintiff's primary contention with respect to this material was that defendant's refusal to consider it was arbitrary and capricious and, as noted above, plaintiff successfully established that defendant's treatment of her claim was arbitrary and capricious.

Furthermore, as explained *infra*, the Court concludes that plaintiff's fee award should not be reduced based on her failure to convince the court to apply *de novo* review. By extension, the Court concludes that it would not be appropriate to reduce plaintiff's hours based on her failure to defend against plaintiff's motion to strike, given that the Court's decision to exclude the evidence was dictated by its decision to apply the arbitrary and capricious standard of review.

11

term disability benefits was arbitrary and capricious.

c. Vague Entries

"If 'the time records submitted in support of a fee application lack sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed, the Court is justified in reducing the hours claimed for those entries.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 30 (N.D.N.Y. 2015) (quoting *Williamsburg Fair Hous. Comm. v. New York City Hous. Auth.*, No. 76 CIV. 2125 (RWS), 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005), *opinion amended on reconsideration*, No. 76 CIV.2125 RWS, 2005 WL 2175998 (S.D.N.Y. Sept. 9, 2005)). A number of plaintiff's entries on his "Schedule of Services" refer only to "legal research" or "file review," and are therefore too vague to support a fee award. *See, e.g.*, *Berkshire Bank v. Tedeschi*, No. 1:11-CV-0767 LEK, 2015 WL 235848, at *5 (N.D.N.Y. Jan. 16, 2015) (holding that the plaintiff could not recover for time claimed in connection with vague entries that mentioned only "review file" or "telephone call"), *aff'd*, No. 15-471, 2016 WL 1459681 (2d Cir. Apr. 14, 2016); *Mary Jo C. v. Dinapoli*, No. 09-CV-5635 SJF ARL, 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014) (billing entry for unspecified legal research was too vague to support fee award).

Although the Court must reduce plaintiff's requested hours in order to account for such inadequate entries, the Court need not "comb through" plaintiff's bills to find each entry that should be excluded; rather, it may apply an "across-the-board reduction in the amount of hours." *Knoll v. Equinox Fitness Clubs*, No. 02CIV.9120(SAS)(DFE), 2006 WL 2998754, at *1 (S.D.N.Y. Oct. 20, 2006); *Brown v. Green 317 Madison, LLC*, No. 11 CV 4466 ENV, 2014 WL 1237448, at *11 (E.D.N.Y. Feb. 4, 2014) ("[C]ourts routinely apply across-the-board reductions for vague entries."), *report and recommendation adopted*, No. 11-CV-4466 ENV CLP, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014); *Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding forty percent across-the-board reduction in hours); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding fifteen percent across-the-board reduction). Accordingly, the Court here will apply a ten percent reduction to plaintiff's requested hours in order to account for the time to be excluded based on plaintiff's vague billing entries. *See Terra Energy & Res. Techs., Inc. v. Terralinna Pty. Ltd.*, No. 12-CV-1337 KNF, 2014 WL 6632937, at *6 (S.D.N.Y. Nov. 24, 2014) (twenty-five percent reduction in fees was warranted based on deficiencies in records, including vagueness of billing entries); *see also Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12-CV-3049 JFB GRB, 2014 WL 2600095, at *11 (E.D.N.Y. June 11, 2014) (applying a twenty percent reduction for "vagueness, inconsistencies, and other deficiencies in the billing records"); *Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 466-469 (W.D.N.Y. 2010) (applying twenty percent reduction for excessive, redundant, and vague time entries); *LaBarbera v. Empire State Trucking, Inc.*, No. 07 CV 669, 2008 WL 746490, at *5 (E.D.N.Y. Feb. 26, 2007) (reducing attorney's fees by twenty-five percent in an ERISA default action because of errors, vague billing records, and duplicative and excessive billing); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (ten percent reduction across-the-board for vague entries).

d. Adjusted Hours

To summarize, plaintiff's request for 100.25 hours of work shall be adjusted as follows: First, the 21.1 hours for which plaintiff has failed to provide sufficient contemporaneous documentation shall be excluded, leaving a total of 79.15 hours. Next, the Court will apply a ten percent reduction to this amount, leaving a total of 71.24 hours.

2. Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). In *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989):

> The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

522 F.3d at 186 n.3, 190 (quoting *Johnson*, 488 F.2d at 717-19). Finally, a district court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298 (internal quotation marks and citations omitted).

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates." (internal quotation marks and citations omitted)). Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the

13

range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

In his declaration, Epstein attests that he has been admitted to practice in New York since 1983 (Epstein Decl. ¶ 7, ECF No. 40-2), and asserts that he has "extensive experience in administrative and legal proceedings involving the determination of disability claims . . . and [has] appeared as Attorney of Record in Federal District Court with regard to ERISA Actions" (*id.* ¶ 8). He also declares that he was previously employed by the Workers' Compensation Board as Council (sic) and as a Workers' Compensation Law Judge." (*Id.* ¶ 9.) He states that he has been employed at his current firm since 2004 and is the "supervising attorney for the Social Security, Long Term Disability and Disability Pension department." (*Id.* ¶ 11.)

Epstein seeks a rate of $325 an hour. The Court concludes that a rate of $275 an hour is more appropriate. Although Epstein has considerable experience in the area of disability claims and is the supervising attorney of his firm's Long Term Disability practice, this particular case was not especially complex,[9] nor did its handling require special skill. *See Alveranga v. Winston*, No. 04-CV-4356 (ARR)(CLP), 2007 WL 595069, at *7 (E.D.N.Y. Feb. 22, 2007) (noting that "[r]ates awarded . . . in cases not involving complex issues tend, on average, to be lower"). Furthermore, Epstein has billed his full rate for time spent traveling, even though, "[c]ourts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time." *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010). For these reasons, the Court finds, in its discretion, that a reduced rate is appropriate.

\* \* \* \*

Accordingly, the Court calculates the lodestar figure to be $19,591.00, which represents 71.24 hours of Epstein's time at a rate of $275 an hour. The Court sees no reason to depart from the lodestar figure in this case, *see, e.g.*, *Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee), and thus awards plaintiff $19,591.00 in attorney's fees.

### C. Costs

The declarations of trust and ERISA Section 502 also entitle plaintiffs to reasonable costs. "As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlancSternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013). In particular, under Local Civil Rule 54.1, "the party must include as part of the request an affidavit that

---

[9] Epstein acknowledges this fact in his reply memorandum in support of his motion for fees. (*See* Pl.'s Reply Mem. at 8 ("[T]his action was not overly complex, was of a rather brief time frame and was based mostly upon a (sic) the submission of one large document . . . .").)

the costs claimed are allowable by law, are correctly stated and were necessarily incurred, and [b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (internal quotation marks and citations omitted), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Here, plaintiff seeks $350 in costs for the filing fee in this case.[10] This cost is appropriate for reimbursement, and the Court awards plaintiff $350 in costs. *See LaBarbera v. Almar Plumbing & Heating Corp.*, No. 07CV4697DLIJMA, 2008 WL 3887601, at *9 (E.D.N.Y. Aug. 20, 2008) (plaintiff was entitled to recover filing fee).

III. CONCLUSION

For the reasons set forth herein, the Court awards plaintiff $19,591.00 in attorney's fees and $350 in costs.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 31, 2016
       Central Islip, New York

\*   \*   \*

Plaintiff is represented by Ronald L. Epstein, Grey & Grey L.L.P., 360 Main Street, Farmingdale, NY 11735. Defendant is represented by Michael H. Bernstein, Sedgwick LLP, 225 Liberty Street, 28th Floor, New York, NY 10281.

---

[10] Plaintiff has failed to provide any documentation verifying her payment of the filing fee. However, the docket reflects that a $400 filing fee was paid on March 18, 2014; thus, the Court will not deny reimbursement of this expense. *See Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. Suffolk Tile & Terrazzo, Inc.*, No. 10-CV-5804 CBA, 2011 WL 5025318, at *2 (E.D.N.Y. Sept. 9, 2011), *report and recommendation adopted*, No. 10-CV-5804 CBA SMG, 2011 WL 5027065 (E.D.N.Y. Oct. 21, 2011).